**Alexander G. Cabeceiras, Esq.**
**Derek Smith Law Group, PLLC**
*Attorneys for Plaintiff*
**One Penn Plaza, Suite 4905**
**New York, New York 10119**
**T: (212) 587-0760**
**F: (212) 587-4169**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---------------------------------------------------X

KEVIN BRITTON,                                     Civil Docket No.: 2:19-cv-20306


         Plaintiff,                       **COMPLAINT**

  -against-

                                         Plaintiff Demands a
                                         Trial by Jury
NORMAN OSTROW, INC.,
22 EASTERN, LLC,
SAVIO D. FIGARO LIMITED
LIABILITY COMPANY,
SAVIO D. FIGARO,
STEVEN LESKO,
DANIEL PRONTI,

            Defendants.
---------------------------------------------------X


### PRELIMINARY STATEMENT

      Jersey City, New Jersey continues to gentrify. Vulnerable populations are being displaced

by increased rents. Mr. Kevin Britton—a man who was born and raised in Jersey City—is a

victim of the times. In January of 2014, a new landlord and management company took over Mr.

Britton's apartment building. Since then, Defendants have brought Mr. Britton to landlord-tenant

court ten separate times for nearly identical claims, have called the police on Mr. Britton, and

have filed other complaints against him. Defendants continue to file frivolous actions against Mr.

Britton, using the New Jersey legal system as a tool to harass and force Mr. Britton from his home. Furthermore, Defendants have discriminated against Mr. Britton due to his income source, and his use of his emotional support animal.

## JURISDICTION & VENUE

1. Jurisdiction of this action is conferred upon this Court as this case involves a Federal Question under 42 U.S.C. § 3604(f)(1)-(3) ("Fair Housing Act").

2. Additionally, the Court has supplemental jurisdiction of New Jersey State causes of action under 28 U.S.C. § 1367.

3. Venue is proper in this District under 28 U.S.C. 1391 § (b)-(c) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within the District of New Jersey, Hudson County.

## PARTIES

4. At all times material, Plaintiff Kevin Britton was and is an individual male, who is a citizen of the State of New Jersey, County of Hudson.

5. At all times material, Norman Ostrow, Inc. (hereinafter referred to as "NO") was and is a domestic profit corporation duly existing by the virtue and laws of the State of Delaware.

6. At all times material NO maintains a principal place of business at 35 Journal Square Plaza #214, Jersey City, NJ 07306.

7. At all times material, 22 Eastern LLC was and is a domestic limited liability corporation duly existing by the virtue and laws of the State of New Jersey.

8. At all times material, 22 Eastern LLC own Mr. Britton's apartment, 22 Eastern Parkway, Apartment #2.

9. At all times material, 22 Eastern LLC contract or pay NO to manage Mr. Britton's apartment.

10. At all times material, SAVIO D. FIGARO LIMITED LIABILITY COMPANY was and is a domestic limited liability company, duly existing by the virtue and laws of the State of New Jersey.

11. At all times material, SAVIO D. FIGARO owns and operates SAVIO D. FIGARO LIMITED LIABILITY COMPANY.

12. At all times material, STEVEN LESKO was and is the manager and operator of NO.

13. At all times material, DANIEL PRONTI was and is the owner of 22 Eastern LLC.

## STATEMENT OF FACT

1. In 1951, Mr. Britton was born in Jersey City, New Jersey.

2. At all times material, Mr. Britton was and is a life-long resident of Jersey City.

3. On or about November 13, 1999, Mr. Britton moved into 22 Eastern Parkway, Apartment #2, with his daughter and cat Harry.

4. At all times relevant, Mr. Britton is the oldest tenant at 22 Eastern Parkway, a three-family unit.

5. In or around October of 2013, the federal government began paying Mr. Britton monthly Social Security ("SS") checks.

6. At that time, Mr. Britton's landlord, Daniel Pronti, allowed him to pay rent two weeks later on the last Wednesday of the month when Mr. Britton received his SS check.

7. In or around January of 2014, Defendants became the owners and managers of Mr. Britton's apartment building.

8. Initially, Defendants allowed Mr. Britton to pay rent in accordance with his SS payment date.

9. In or around 2015, Defendants demanded Plaintiff pay his rent on the first of the month. Mr. Britton explained to Defendants' Manager Steven Lesko that he was a SS recipient and that his SS check arrives on the last Wednesday of every month. He asked to continue to pay rent the same way he had for the last year—after his SS check was received. Defendants refused to make any accommodation.

10. As a result, in or around February of 2015, Defendants initiated a case against Mr. Britton in Hudson County. Defendants sought payment of Mr. Britton's "late" rent; meaning, Mr. Britton paid "late" by paying when he received his SS check, and not on the first of the month.

11. Ultimately, the Judge in that action ruled that Mr. Britton was to pay his rent in accordance with his SS payment date.

12. For the next two years, Mr. Britton paid rent in accordance with his SS payment date.

13. In or around early 2017, Defendants began demanding Mr. Britton pay his rent on the first of the month. Mr. Britton attempted to comply to avoid legal issues.

14. In or around April of 2017, after Mr. Britton tendered his rent in accordance with his SS payment date, Defendants initiated a landlord-tenant action against Mr. Britton. Defendants demanded payment on the first.

15. Thereafter, in or around May of 2017, Mr. Britton paid his rent in accordance with his SS payment date. Defendants accepted the payment but advised Mr. Britton that he did not attend a court date. Defendants further advised Mr. Britton that they received a "lock-out" order against him.

16. At that time, Mr. Britton spoke to Defendants' Manager Steven Lesko and requested repairs to the apartment that included installing a window (which was smashed during Hurricane Sandy in 2012), a shower, a stove, and a working toilet, among other things.

17. In response, Lesko told Mr. Britton that Mr. Britton's rent was going to increase for the next month and every month thereafter if Mr. Britton continued to complain or notify any authorities about the abhorrent condition the apartment was in.

18. Mr. Britton was shocked. Mr. Britton simply wanted a working toilet, among other fundamental repairs.

19. Throughout 2017, Mr. Britton used a bucket as a toilet, as Defendants failed to respond to his request to install a working toilet.

20. In or around June of 2017, Defendants demanded Plaintiff pay his rent on the first of the month and demanded an increase in rent.

21. Plaintiff, again, explained to Defendants that he was able to pay rent when he received his SS check on the last Wednesday of the month.  Defendants were indifferent.

22. At that time, Plaintiff attempted to comply with Defendants' unreasonable and discriminatory demands to avoid court costs.

23. On or about June 30, 2017, Mr. Britton tendered his rent. On the same day, Defendants initiated another case against Mr. Britton. (Norman Ostrow Inc FO vs. Kevin Britton, LT-007925-17). Defendants again sought a rent increase and payment on the first of the month.

24. In or around the end of August of 2017, Mr. Britton went to pay his rent on his SS payment date. Defendants refused Mr. Britton's payment and again demanded Mr.

Britton pay rent on the first of the month. Because of Mr. Britton's income source, he could not adhere to Defendants' unreasonable and discriminatory request.

25. Thus, on or about September 1, 2017, Defendants initiated another case against Mr. Britton. (Norman Ostrow Inc FO vs. Kevin Britton LT-010942-17). Defendants again sought a rent increase and payment on the first of the month.

26. In or around late October of 2017, Mr. Britton's daughter went to NO's office to speak to Lesko and Marika Quiles about repairs to her father's apartment. Defendants and Plaintiff came to a short-lived agreement; Mr. Britton was to pay his rent on the date his social security check was received and, in exchange, Defendants agreed to repair Mr. Britton's toilet.

27. Quiles told Mr. Britton's daughter that Defendants would not make any other repairs to the property because "the repairs would exceed $20,000." Quiles said that if Mr. Britton left the property Defendants would have to spend $20,000 in repairs and therefore they were willing to "accept" continued rent payments upon Mr. Britton's SS check being received to avoid repairing the apartment.

28. In or around January of 2018, as a result of the on-going stress caused by Defendants, Mr. Britton had a heart attack.

29. On or about February 28, 2018, as a result of the heart attack from the on-going stress caused by Defendants, Mr. Britton required emergency surgery in the cardiac unit.

30. On the same day, Defendants initiated another case against Mr. Britton. (Norman Ostrow Inc FO vs. Kevin Britton, LT-002496-18). Defendants sought additional unspecified charges and payment on the first of the month.

31. In or around April of 2018, Mr. Britton again requested needed repairs to the property. The request included removing black mold, fixing a collapsed ceiling in three rooms, installing windows, installing a working shower, and fixing a stairwell, among other requests.

32. In response to requesting needed repairs, about two weeks later, Defendants sent Mr. Britton a notice demanding that his rent be paid on the first of the month and he pay an increase in rent of $105 starting June 1, 2018.

33. On or about June 29, 2018, Defendants initiated another case against Mr. Britton. (LT-007173-18). Again, Defendants brought a claim against Mr. Britton seeking he pay rent on the first of the month.

34. On or about July 19, 2018, a hearing was held in LT-007173-18 in front of Judge Radames Velasquez. Judge Velasquez dismissed Defendants' demand for a rent increased but allowed Defendants to proceed with their demands to be paid on the first of the month.

35. On or about August 17, 2018, Judge Velasquez, in LT-007173-18, found that Defendants could not change Mr. Britton's payment dates to the first of the month.

36. On August 20, 2018—two days after receiving a ruling from Judge Velasquez concerning an almost identical demand—Defendants sent a letter to Mr. Britton demanding a rent increase due to "unscheduled legal expenses regarding landlord tenant litigation." Meaning, because Defendants lost their argument in front of Judge Velazquez attempting to recover rent on the first of the month and a rent increase, they retaliated against Mr. Britton by increasing his rent even higher.

37. On or about August 30, 2018, the parties returned to Court. Again, Defendants argued Mr. Britton should pay his rent on the first of the month.

38. On or about October 1, 2018, Defendants initiated yet another case against Mr. Britton. (LT-011218-18).

39. On or about October 22, 2018, Mr. Britton appeared before Judge Vincent J. Militello. There, Judge Militello *again* told Defendants what they already knew; Defendants could not change Mr. Britton's payment dates to the first of the month. At the hearing, Judge Mitello expressly found 447 Assocs. v. Miranda, 115 N J  522, 527, 559 A.2d 1362, 1364 (1989) applied to Defendants' claims and therefore they could not demand payment on the first of the month.

40. On or about October 31, 2018, Defendants initiated **another** case against Mr. Britton in Housing Court in Hudson County, 9 days after Judge Militello's findings. (LT-012513-18). Again, Defendants' complaint demanded that Mr. Britton pay rent on the first of the month and demanded an increase in monthly rent.

41. At the hearing for the case, on or about December 3, 2018, Judge Militello encouraged Defendants to withdraw their complaint against Mr. Britton. Defendants did so.

42. On or about November 30, 2019, the Jersey City Housing Code Enforcement Inspector came to Mr. Britton's apartment. The Inspector found serious, dangerous conditions and cited Defendants for multiple housing-code violations, including mold in multiple rooms, no stove, no electrical, maintaining an unsafe stairwell, no emergency exits, broken windows, and holes in the property's floor.

43. On or about February 1, 2019, the Jersey City Fire Code Enforcement Inspector came to Mr. Britton's apartment. The Inspector found serious, dangerous conditions and cited

Defendants for multiple fire code violations, including maintaining an unsafe stairwell, no emergency exits, broken windows, and holes in the property's floor.

44. On or about January 2, 2019—not even a full month after Judge Militello dismissed Defendants' complaint—Defendants initiated **another** case against Mr. Britton in Landlord-Tenant Court in Hudson County (LT-000100-19) seeking Mr. Britton pay rent on the first of the month as well as an increase in rent of $150.

45. In or around February of 2019, Defendants made some repairs to the apartment.

46. On or about February 25, 2019, the Jersey City Fire Code Enforcement Inspector again came to inspect what repairs had been made.

47. On or about February 25 2019, Defendants' Manager Lesko went to Municipal Court to file a complaint against Mr. Britton, stating that on February 25, 2019, Mr. Britton denied Defendants access to make repairs to the property and continued to deny Defendants access. This statement was patently false.

48. On or about February 28, 2019, Defendants filed ***another*** complaint against Mr. Britton for non-payment of rent and also—predictably—sought a rent payment date for the first of the month. (LT-27220-19).

49. On or about March 18, 2019, Defendants' Manager Lesko appeared in Municipal Court to pursue the complaint against Mr. Britton.

50. On or about March 19, 2019, Plaintiff hired a structural engineer to evaluate the safety of the property's stairwell. The licensed engineer determined the apartment's stairwell was in severe disrepair and habitability of the above apartment should not be permitted until it was entirely replaced by a licensed stair contractor.

51. On or about April 10, 2019, the parties attempted to mediate claims. Specifically, the parties sought to mediate habitability issues. Despite being there to mediate habitability issues, Defendants petitioned a landlord-tenant judge to have Mr. Britton's payment date moved to the first of the month.

52. On or about July 7 and 17, 2019, a structural engineer inspected Mr. Britton's apartment. The engineer found that no repairs had been made and the stairs in the building were dangerously loose. The engineer concluded the stairs were in danger of collapsing.

53. On or about July 30, 2019, one of the stairs to Mr. Britton's apartment came off, leaving an open 6 foot drop.

54. On or about August 6, 2019, the Municipal Building Code Inspector examined the apartment. The Inspector took pictures and immediately contacted the Fire Department.

55. In or around August 2019, Mr. Britton notified the Defendants of the unsafe stairwell.

56. On or about August 23, 2019, the owner of 22 Eastern, LLC, Daniel Pronti, called a Lieutenant at the Jersey City Police Department and falsely reported Mr. Britton had damaged the property—specifically, the missing stair that Mr. Britton had requested be repaired.

57. When the police arrived at the property, Mr. Britton's daughter showed the police officer a copy of the engineer's report, showing the ongoing deterioration of the property. Officer Kevin Solawski lamented that he was being used as a pawn by the property manager. Officer Solawski left without arresting Mr. Britton.

58. In or around August of 2019, Defendants attempted to glue the missing step back into place.

59. On or about August 26, 2019, Defendants sent Mr. Britton a letter demanding a rent increase of $500 and payment on the first of the month.

60. On or about August 30, 2019, Defendants, by and through their attorney Savio D. Figaro, caused a letter to be taped to Plaintiff's door, demanding a rent increase of $450 and payment on the first of the month.

61. On or about September 21, 2019, Defendants, by and through their attorney Savio D. Figaro, sent Mr. Britton a letter terminating his lease and demanding Mr. Britton immediately vacate the property. Defendants cite to allege damage done to the property and having a cat in the building as an illegitimate "for cause" reason for terminating Mr. Britton's lease.

62. At all times material, Mr. Britton's cat Harry, who has lived with Mr. Britton in the building for 20 years, is a registered Emotional Support Animal (ESA).

63. Since 2014, Defendants knew or should have known Harry lived with Mr. Britton as an ESA.

64. Upon terminating Mr. Britton's lease, at no time did Defendants reach out to attempt to accommodate Mr. Britton or engage in an interactive dialog.

65. On or about September 30, 2019, Defendants filed yet another cause of action against Mr. Britton, claiming Mr. Britton had failed to pay rent. Defendants also requested his payment date be changed to the first of the month. (LT-11056-19).

66. Despite their knowledge, Defendants continued to bring claims against Mr. Britton demanding that Mr. Britton pay rent on the first of month, despite multiple judge's telling Defendants, multiple times, that they cannot, and despite multiple judge's instructing Defendants 447 Assocs. v. Miranda, 115 N.J. 522, 527, 559 A.2d 1362,

1364 (1989), Defendants continued to put forward frivolous arguments in order to harass Mr. Britton.

67. At all times materials, Defendants were aware that Mr. Britton received SS checks and relied on SS for income.

68. Defendants repeatedly demanded Mr. Britton pay on the first of the month while knowing Mr. Britton was a SS recipient. Defendants continued to harass Mr. Britton because of his status as a SS recipient.

69. Upon information and belief, Defendants have not harassed the other tenants at 22 Eastern Parkway.

70. Upon information and belief, no other tenants at 22 Eastern Parkway receive SS benefits.

71. In total, Mr. Britton has had to make 19 separate court appearance.

72. Because of Defendants, Mr. Britton has amassed financial damages over $50,000.

73. At all times material, Savio D. Figaro, by and through his limited liability company, SAVIO D. FIGARO LIMITED LIABILITY COMPANY initiated and pursued all the above actions to collect alleged debts owed to NO and 22 Eastern, LLC.

74. As a result of Defendants' actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed and emotionally distressed.

75. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of salary, and other pecuniary damage, and Plaintiff also suffered future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff has further experienced severe emotional and physical distress. Plaintiff has suffered and will

continue to suffer damage to his credit and ability to seek other rental housing or mortgage loans.

76. As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages against the Defendant severally.

77. The above are just some examples of some of the unlawful discrimination and retaliation to which Defendants subjected Plaintiff.

<u>**AS A FIRST CAUSE OF ACTION**</u>
<u>**FAILURE TO ACCOMMODATE**</u>

78. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint as if set forth herein more fully length.

79. The Fair Housing Act prohibits:

"(f)(1) To discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of--

(A) that buyer or renter,

(B) a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or

(C) any person associated with that buyer or renter.

(2) To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of--

(A) that person; or

(B) a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or

(C) any person associated with that person.

(3) For purposes of this subsection, discrimination includes--

(A) a refusal to permit, at the expense of the handicapped person, reasonable modifications of existing premises occupied or to be occupied by such person if such modifications may be necessary to afford such person full enjoyment of the premises except that, in the case of a rental, the landlord may where it is reasonable to do so condition permission for a modification on the renter agreeing to restore the interior of the premises to the condition that existed before the modification, reasonable wear and tear excepted.

(B) a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling…" 42 U.S.C.A. § 3604

80. On or about July 31, 2019, Mr. Britton officially registered Harry the Cat as an Emotional Support Animal (ESA Verification #: ESA369141853) by and through Dr. Adrian J Rawlinson.

81. On or about September 21, 2019, Defendants evicted Plaintiff because of Plaintiff's cat, Harry.

82. At all times material, Defendants knew or should have known Mr. Britton had an ESA.

83. At all times material, Defendants failed to accommodate Mr. Britton or make an effort to accommodate him.

84. At all times material, Harry was and is an ESA, used to help alleviate Mr. Britton's disability.

85. Defendants violated the above and Plaintiff suffered numerous damages as a result.

## AS A SECOND CAUSE OF ACTION VIOLATION OF
## THE FAIR DEBT COLLECION PRACTICES ACT
## [AS AGAINST DEFENDANTS SAVIO D FIGARO AND SAVIO D FIGARO
## LIMITED LIABILITY COMPANY]

86. Plaintiff repeats and realleges each and every allegation made in the above paragraphs

of this complaint as if set forth herein more fully length.

87. Savio D. Figaro is a debt collector as defined by 15 U.S.C § 1692a(6) and engaged in

unlawful debt collection practices against Mr. Britton.

88. 15 U.S.C § 1692g provides in relevant part:

(a) Notice of debt; contents Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing --

(1) the amount of the debt;

(2) the name of the creditor to whom the debt is owed;

(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

(b) Disputed debts If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) of this section that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this subchapter

may continue during the 30-day period referred to in subsection (a) unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

(c) Admission of liability: The failure of a consumer to dispute the validity of a debt under this section may not be construed by any court as an admission of liability by the consumer.

(d) Legal pleadings: A communication in the form of a formal pleading in a civil action shall not be treated as an initial communication for purposes of subsection (a).

89. Savio D. Figaro repeatedly failed to provide proper notice requirements pursuant to the FDCPA before filing actions against him, including but not limited to failing to provide validation notice of debt pursuant to § 809, not providing 30 days-notice before initiating actions against Mr. Britton, and not allowing Mr. Britton to dispute debts.

90. As a result of the unlawful debt collection practices, Plaintiff suffered damages.

## AS A THIRD CAUSE OF ACTION
## DISCRIMINATION UNDER
## NEW JERSEY STATE LAW

91. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint as if set forth herein more fully length.

92. Pursuant to *N.J.S.A.* 10:5–12(g)(1), (2), and (4) it is unlawful:

"To refuse to sell, rent, lease, assign, or sublease or otherwise to deny to or withhold from any person or group of persons any real property or part or portion thereof because of … source of lawful income used for rental or mortgage payments…";

"To discriminate against any person or group of persons because of … source of lawful income used for rental or mortgage payments in the terms, conditions or privileges of the sale, rental or lease of any real property or part or portion thereof or in the furnishing of facilities or services in connection therewith…";

"To refuse to sell, rent, lease, assign, or sublease or otherwise to deny to or withhold from any person or group of persons any real property or part or portion thereof because of the

source of any lawful income received by the person or the source of any lawful rent payment to be paid for the real property…"

93. Defendants repeatedly discriminated against Mr. Britton because of his lawful source of income.

94. Defendants repeatedly harassed Mr. Britton because of his lawful source of income.

95. Defendants violated the above and Plaintiff suffered numerous damages as a result.

**AS A FOURTH CAUSE OF ACTION**
**RETALIATION UNDER**
**NEW JERSEY STATE LAW**

96. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint as if set forth herein more fully length.

97. New Jersey LAD (N.J. Stat. Ann. § 10:5-12 (d)) provides that it shall be unlawful for "any person to take reprisals against any person because that person has opposed any practices or acts forbidden under this act or because that person has filed a complaint, testified or assisted in any proceeding under this act or to coerce, intimidate, threaten or interfere with any person in the exercise or enjoyment of, or on account of that person having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by this act."

98. Defendants violated the section cited herein by unlawfully retaliating against Plaintiff for reporting and opposing practices and acts forbidden under New Jersey LAD § 10:5-12.

99. Defendants violated the above and Plaintiff suffered numerous damages as a result.

## AS A FFITH CAUSE OF ACTION
## AIDING & ABETTING UNDER
## NEW JERSEY STATE LAW

100. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint as if set forth herein more fully length.

101. New Jersey LAD (N.J. Stat. Ann. § 10:5-12 (e)) provides that it shall be unlawful for "any person, whether an employer or an employee or not, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this act, or attempt to do so."

102. Defendants violated the above and Plaintiff suffered numerous damages as a result.

## AS A SIXTH CAUSE OF ACTION
## ABUSE OF PROCESS

103. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint as if set forth herein more fully length.

104. Defendants repeatedly filed complaints against Mr. Britton, called the police on Mr. Britton, and repeatedly brought Mr. Britton to court.

105. Despite the repeated dismissal of Defendants' claims and the claims repeatedly being decided in Mr. Britton's favor, Defendants continued to bring the same causes of action against Mr. Britton.

106. Defendants used the New Jersey legal system in order to evict Mr. Britton and/or make Mr. Britton's life miserable.

107. Defendants violated the above and Plaintiff suffered numerous damages as a result.

## AS A SEVENTH CAUSE OF ACTION
## MALICIOUS USE OF PROCESS

108. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint as if set forth herein more fully length.

109. Defendants repeatedly filed complaints against Mr. Britton, called the police on Mr. Britton, and repeatedly brought Mr. Britton to court.

110. Despite the repeated dismissal of Defendants' claims and the claims repeatedly being decided in Mr. Britton's favor, Defendants continued to bring the same causes of action against Mr. Britton.

111.  Defendants' actions were motivated solely by malice.

112. Defendants violated the above and Plaintiff suffered numerous damages as a result, including over $50,000 in attorney's fees defending these frivolous lawsuits, a heart condition, and numerous other ailments.

113. Additionally, Defendants, due to their malicious intent, have failed to make meaningful repairs to Mr. Britton's property, causing Mr. Britton to live in deplorable, unsafe, and humiliating conditions.

114. Defendants violated the above and Plaintiff suffered numerous damages as a result.

### AS A EIGHTH CAUSE OF ACTION
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

115. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint as if set forth herein more fully length

116. Defendants repeatedly and purposefully brought frivolous claims against Mr. Britton, called the police on Mr. Britton, and subjected Mr. Britton to disgusting living conditions, among other outrageous acts.

117. As a result of this deplorable and extreme behavior, Mr. Britton suffered severe emotional distress and physical ailments, including a heart condition.

118. Defendants violated the above and Plaintiff suffered numerous damages as a result.

## AS AN NINTH CAUSE OF ACTION
## VIOLATION OF THE NJ REPRISAL LAW

119. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint as if set forth herein more fully length.

120. N.J.S.A. 2A:42-10.10 provides:

"No landlord of premises or units to which this act is applicable shall serve a notice to quit upon any tenant or institute any action against a tenant to recover possession of premises, whether by summary dispossess proceedings, civil action for the possession of land, or otherwise:

a. As a reprisal for the tenant's efforts to secure or enforce any rights under the lease or contract, or under the laws of the State of New Jersey or its governmental subdivisions, or of the United States; or

b. As a reprisal for the tenant's good faith complaint to a governmental authority of the landlord's alleged violation of any health or safety law, regulation, code or ordinance, or State law or regulation which has as its objective the regulation of premises used for dwelling purposes; or

c. As a reprisal for the tenant's being an organizer of, a member of, or involved in any activities of, any lawful organization; or

d. On account of the tenant's failure or refusal to comply with the terms of the tenancy as altered by the landlord, if the landlord shall have altered substantially the terms of the tenancy as a reprisal for any actions of the tenant set forth in subsection a, b, and c of section 1 of this act. Substantial alteration shall include the refusal to renew a lease or to continue a tenancy of the tenant without cause.

Under subsection b of this section the tenant shall originally bring his good faith complaint to the attention of the landlord or his agent and give the landlord a reasonable time to correct the violation before complaining to a governmental authority.

A landlord shall be subject to a civil action by the tenant for damages and other appropriate relief, including injunctive and other equitable remedies, as may be determined by a court of competent jurisdiction in every case in which the landlord has violated the provisions of this section."

121. Plaintiff made multiple, good faith complaints to governmental authority concerning health and safety violations within the apartment.

122. Plaintiff asserted legal rights and Defendants further retaliated against him for asserting said legal rights.

123. In retaliation, Defendants initiated civil actions in attempts to remove Mr. Britton and repossess the apartment.

## **JURY DEMAND**

Plaintiff demands a trial by jury as to all issues so triable.

**WHEREFORE**, Plaintiff respectfully requests a judgment against the Defendants jointly and severally for all available damages including but not limited to emotional distress, lost wages, back pay, front pay, punitive damages, statutory damages, attorneys' fees, costs, medical expenses, interest and all other damages as are just and proper to remedy Defendants' unlawful practices.

Dated:        November 14, 2019
              New York, New York


                              Respectfully Submitted,

                              **DEREK SMITH LAW GROUP,  PLLC**


                    By:      */s/ Alexander G. Cabeceiras*

                              Alexander G. Cabeceiras, Esq.
                              One Pennsylvania Plaza, 49th Floor
                              New York, NY 10119
                              *Attorney for Plaintiff*